Good morning, Your Honors. May it please the Court, Shireen Charlock, Federal Defenders on behalf of Ms. Cuevas. I've raised a number of issues in the briefs, and this morning I'd really like to focus on the insufficiency of the evidence regarding the materiality of the false statement, as well as the issues problematic to the indictment. In this case, the District Court should have granted a judgment of acquittal under Rule 29 because the evidence of materiality of the answer to the false or this false answer, it's my boyfriend's car, was absolutely absent in the trial. From my point of view, you're at about the second or third inning, and I'd like to get back to the first inning, if you don't mind the baseball analogy. I don't mind. Does the indictment tell us what the false statement was? No. And the indictment does not. What's the consequence of that? The consequence was that Ms. Cuevas was forced to defend against a moving target theory of prosecution. What's the legal consequence? The legal consequence is that the – that she is left with no reason to know what false statement the grand jury passed upon and what false statement necessarily the pettit jury convicted her upon. And if you're right about that, if you're legally correct about that, in a sense, and that convinces all three of us, is there any reason to consider the other issues? Well, in a sufficiency of the evidence claim, there can be no retrial. So Ms. Cuevas is better off winning on that grounds. The district court judge, in an effort to cure the deficient indictment at the jury instruction phase, actually gave a jury instruction, and I noted this in my brief. The government didn't make as much of it, but the district court judge did instruct the jury the false statement is the statement about car ownership. But it's my position that, since the indictment was defective, that doesn't at all cure a defective indictment. Russell, the Supreme Court case, and Cecil, this Court's case, says that a bill of particulars, open file discovery, those things can't cure the deficient indictment. And we moved pretrial to dismiss the indictment. But the reason I had wanted to focus first upon the materiality, if you don't mind me jumping ahead to the final inning, is because in this particular case, the government, the district court, and the government on appeal focuses on, well, this question is always asked, who owns the car? And so it's got to be important. But for materiality, the question's importance isn't what is important. It's the answer. And in this case, the only material answer that could have been a successful 1001 prosecution is a false claim to ownership of the car. Because the inspector testified, the inspector testified that what's important to me is if the driver is the owner, if they're driving their own car or not. Or in the car. Yes. Or if the registered owner is in the car. Absolutely right. And her answer ruled out both. Both. Completely. And so the only material false answer my client could have given that could result in a successful prosecution is a false statement, it's my car. She said, it's my boyfriend's car. But it didn't matter if she had a boyfriend or didn't have a boyfriend. And the operative important part of the answer was it's not my car. Well, and that her boyfriend wasn't in the car. Right. And there's another woman in the car with her. Well, there was some, wasn't there a smuggled? Well, there was the hidden undocumented alien, but since nobody saw him, I don't think anybody could have thought that was her boyfriend. So the bottom line is that there really could not have been, under the evidence in this case, you know, whether or not the question's important, the answer could not have possibly made a difference. Because the agent's testimony said it is important to me if someone is driving their own car, because I suspect contraband when someone's not driving their own car. In this case, the decision. So what happens if we agree with you on that? Then the whole case goes out and that's the end of it. Yes. But you said that if it's a defective indictment, then what happens? I have not had it happen where I've had a defective indictment and the government has ended up superseding and retrying the case. I'm not exactly positive, but I don't know if there is. You don't know what the consequences of what you're asking for are? Oh, well, I fear, I fear that the consequence could be that the government could get a perfected indictment. Right. And state, yes, and then go forward. That doesn't always happen. Sometimes they decide not to. But that, I, I would fear that would be a consequence as opposed to. Is there any bar to that on the indictment issue alone? The record reflects silence. I don't, I'm not, I'm not really aware that there is a bar. I wish that I could come to that. Well, on the indictment, what's the problem with count three? I mean, they, it identifies November 24, 2005, in California, at Customs and Border Protection, and a statement to Officer Gomez. Is there any case that says you have to articulate or paraphrase or quote the statement itself? I do believe that Russell. Doesn't say that. Well, Russell is a different offense. Right. And says you have to articulate a theory of materiality, but Russell also says, in terms of the particular questions in Russell that were left unanswered, and this is, I believe, at page 764, since the indictments in Russell set out not only the times and places of the hearings at which Petitioners refused to testify, but also specified the precise questions which they then and there refused to answer, it can hardly be doubted that they would be fully protected from, again, being put in jeopardy for the same offense. So Russell's approving, setting forth those particular questions. How many questions were at issue here? Right. What was it that was material that she answered, aside from the boyfriend statement? There were at least three. She was asked for the purpose of her trip to Mexico, and she was asked if she had anything to declare. And then she was asked who owns the car. Okay. So what does purpose got to do with anything? That's material. Well, the agent did testify something about, I always ask people what the purpose of the trip is. But you just said that that's not material any more than the boyfriend was. Well, I actually think the purpose of the trip has more materiality than the ---- She was going to say my purpose of the trip was ---- They asked what the purpose was. I went down to pick up this guy that's hidden under the floor mat. Well, that's not what was said. I know, but that's okay. The purpose, she said, according to the government and what they argued in closing argument contrary to what they promised to argue only, was that she said the purpose of her trip was partying down in Tijuana and that she lied at primary. He argued in closing argument that she lied multiple times. And the district court actually found that there were, and I think this is an excerpt of record page 49 in the volume one. The district court said, yeah, there were multiple statements. But you know what? You were on notice that they all could have been false. What's appendix B supposed to indicate? Appendix B is actually my client's statement for the Miranda issue. For the Miranda issue. Yeah. That was just the Miranda warning. So I apologize. The trial went on for a bit, and there's a lot of volumes. But in volume one, at page 49, the district court said, yeah, I agree, there were multiple statements, but you were on notice. But according to Russell and Cecil, that can't cure a defective indictment. You can't, after the fact, say, well, you were on notice. Because the whole point is we don't know what statement the grand jury passed on. We don't know if they passed on the negative declaration, the answer to what the purpose of the trip to Mexico was, or the answer to who owns the car. And that's exactly what she has the right to know about under the Fifth Amendment. And she didn't. And we asked for it multiple times. What do you mean you asked for it? We moved to dismiss the indictment and said you have to tell us what the false statement is. Well, they told you. Well, the government said this is what I am averring that I won't argue contrary to. Like, this is what my theory is that you're judicially estopped, or he said something to that nature. And I said I want to know what the grand jury passed on. We never found that out. There were never any transcripts of the grand jury proceeding. So she was denied that Fifth Amendment right that couldn't be cured by the prosecutors after the fact supposition. And there were three questions asked by Gomez, the record indicates? Yes. And you don't know which one from the indictment is being relied on as the false, fictitious, or fraudulent statement? You know, the other point about the indictment is I think it's pretty clear it was a boilerplate document. Oh, how could you say that? Because it describes your client as he. Yes, that was a dead giveaway to me that they got the gender wrong of my client, found it a little troubling. And it also appears that there should have been somewhere to insert the false statement and it just wasn't done. And there's really fairly little excuse when you're charging a young woman with a Federal felony offense. Do you want to save the rest of your time for rebuttal? Yes. I do. Good. Thank you. Good morning. Please, the Court. My name is Larry Spong, representing the United States in this case. It sort of looks like somebody stopped typing when they got to this. Absolutely, Your Honor. There's no doubt. There's a mistake here. Yes, it certainly was a form indictment. That's what we do.   There's a mistake here. It certainly was a form indictment. That's what we do. These things that apparently somehow in transferring what was approved, going to the grand jury unit to put it all together, to hand to the grand jury, somehow a draft or something got put in there. There's a mistake. There's no doubt about it. That doesn't relieve anybody of their burden to show that it's an indictment that stands up under the test. Absolutely. And here, there's no specification of what the statement is. And do you agree there were three statements made to Gomez? Yes. Well, so how do you know from count three which one you're talking about? Well, we what the court found. The test isn't which statement. The test is even as poorly as this is drafted, granted, the test is whether it provides the minimum constitutional requirements, those being did it give adequate notice so they could defend, and did it give adequate notice so they can assert double jeopardy. And I would say in this case, not in most cases probably. For example, where there's a long interview. But in this case, where it's such a limited number of statements at a very particular we did at least the indictment did say it was on this date to this officer. There is no surprise here as to what those statements were. So what if the statement that was tried was strictly on the theory that she lied about the boyfriend? Okay. And you lose on that. Can you reindict on the failure to declare the false declaration or non-declaration? I would think not. Why not? Well, because if we're going to rely on what we're saying here is the impact. What would prevent it? You might make a prosecutorial decision. As a matter of law, you talked about double jeopardy. So you go on one of the three statements, and the other one, which would be highly material, was the failure to disclose the hidden statement. Had. Had. I think had the indictment said the specific statement, that would be true. In this case, because it didn't, and because we're relying on the fact that there is a certain set of them, I think we would be barred from doing that just because of the uniqueness of the situation. Had we said the specific statement, I would agree. But in this situation, where there is such a limited focus, then the question is, can it meet those standards? The district court looked at that and said yes. And it wasn't any surprise. Even the appellant in their brief when they talk about variance admit it was this one statement that we prepared for. Everybody knows that. This fact, this statement, isn't one of the crucial elements that has to be in. All the elements were here. And so this is similar to an indictment where, for example, the amount of drugs wasn't stated. And so is there really any harmless error here? No. Everybody knew what the statement was. The court instructed on that particular statement. And contrary to what appellant. Pardon? Was there any harmless error here? No. No. I'm sorry. If there is error here, it's harmless. I'm sorry. How do we know what statement the grand jury thought was false? In the record, we don't. I did. Isn't the answer we don't? In the state of the record, we don't. But what I'm saying is that's not, that's like saying we don't know what the amount of drugs the grand jury heard. Well, that is subject to harmless error. When this issue first came up, what would your options have been? One option would have been to do what you did, try to defend this indictment. Did you have another option of running back to the grand jury? Absolutely. Why didn't you pursue that? I cannot answer that, Your Honor. Because look what the results are. I absolutely agree. But you already ran back once, didn't you? We did go back to do that. Right. So we should have done. I agree. The better practice would have been to do it. Why it wasn't done, the only thing I can surmise is because it was successfully defended, the prosecutor felt there wasn't a reason to do it. Yes. Yes, Your Honor. First of all, when asking this question, we asked to view the light in the evidence most favorable to the government. There were two witnesses. Both testified as to the materiality. There was no contrary evidence. What the appellant is asking is for this court to determine as a matter of law that this statement that is, which is the result of a question asked all the time. And what was the purpose of the question? The purpose of the question, as I said, a couple of them. To find out whether the owner was the driver or passenger. It's to find, well, yes, and to find out that relationship. For example, look, it's not just whether this statement did or, but whether there are foreseeable circumstances that could lead to other actions. For example, had she said, had they, and might have had not other things occurred, said, well, what's your boyfriend's name? Then they'd look at the registration and see if it's the same. That's the kind of action, the further action that's foreseeable that would have come here. As the district court noted, yet this is done all the time, it's the district court here who's really familiar with what these cases, there's lots and lots of these cases, and what is material and what's not. Lots and lots of these cases? Lots and lots of smuggling cases, yes. And cases where, I shouldn't say false statement cases, but lots of cases where it comes up, what was asked at primary? I mean, quite frankly, this is the busiest land border in the world. It sort of doesn't really comport with common sense. Isn't the question whether it was material here? Not material in a general sense. It may have led, but where's the evidence that you just gave about, well, it could have led to asking the boyfriend's name? Well, I think it's contained in the answer that it is relevant to who owns the car. Well, it's relevant to whether the driver and the owner are the same or familiar. Okay, but as to that, it didn't make any difference because it was false because the worst that could happen, could it happen that she in fact was the owner, right? And that would have been favorable to her. That would have been favorable to her. Yeah. Yes, it did. She disavowed ownership. Right. And there's no boyfriend in the car, so now what the agent has said, this is what I want to find out by asking this question, why we always ask, are you the owner? No. Or who owns the car? Not I. X owns it. Is X in the car? No. But I think it is. So what would have been asking the name of the boyfriend? Because that's the legal test. Are there foreseeable circumstances where this might influence the agency's decision? Suppose she had, when asked, she had said, you know, is this your car? No, it belongs to Judge Crater or Amelia Earhart or Babe Ruth. Did you proceed on that? Would that be material? Yes. It's the falsity of the answer that's material. It's not the substance of the statement. It's the falsity of the answer. The fact that it's false will now lead, under foreseeable circumstances, can lead to other things. So I hear you saying all false statements are material. All false answers to this question are material. In this context. That sounds awfully tautological to me. I think that's what the evidence is, and there's no contrary evidence. And, I mean, I don't know how else to make a common-sense argument other than they always make this. They think it's important. And obviously the smugglers think it's material. No, no, no, no. Slow down a minute. The evidence is, as I look at the record, is that you have the agent describing, in this case, why it was a material question. And when you look at the logic of why she said, not that it would lead to a variety of other questions, I ask it because I want to find out whether or not the owner is the driver or is in the car. Because it's material to me. That's what we have. You're telling us now on appeal that there's other stuff. There's no evidence of that from the agent, is there? Well, I think that's the logical inference. It isn't logical. It isn't just that. I'm not trying to second-guess the logic of the border guard. That's what she says. No. She says it's material because this is why I asked the question. So she got an answer that was false, but it. Right. And the question is, is a false statement material? It is material because it can lead to other things. Like what? In this case, like asking the next question. Which was? Which would have been, had other things not happened, what's your boyfriend's name? So then she can check it against the registration. It's not. I mean, that's really what's the importance here. The falsity leads them to other actions. Right. Okay. Can I ask you a question? Yes. Is this case representative of the kinds of cases that go to jury trial in your district? No, Your Honor. I agree. This was not. The indictment was a mistake. You always hear how everybody is swamped down there, and then you see this case, and you kind of wonder, this is a pretty big expenditure of resources, unless she's a terrorist and you're not telling us about it. Well, Your Honor, I believe that the assessment was made that, although there are some sympathies here, that she did know what she was doing, and so this case should be brought. Well, U.S. attorneys usually exercise discretion as to whether it's an appropriate use of resources, and look at all the resources that have been poured into this case about that funny little statement. I agree. Okay. I think. Thank you. Thank you very much. Something you're dying to tell us? Just very. You're going to try to snatch something from the jaws? No, no, no, no. But I do want to bring up one important point, which is the government never argued harmless error on the indictment issue in their briefs. My reply brief, I said they waived it, they didn't argue it, citing Varela Rivera. But the other important point is that this Court's recent case of Salazar-Lopez, along with DuBose, said that when you raise an indictment issue pretrial and preserve it, there is no harmless error analysis. We saw that in the briefs. Thank you. I don't want to snatch anything. Okay. Thank you, counsel. It's a rousing end to an interesting day, and we appreciate both of your good representation. Thank you. Thank you. The case argued is submitted, and we'll stand and recess.
judges: Trott, Hawkins, Fisher